IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>SCOTT JOSEPH NIELSEN,<br><br>                Defendant. | 8:21CR162<br><br>FINDINGS AND RECOMMENDATION |

      This matter is before the Court on the Motion to Suppress Search (Filing No. 18) filed by Defendant, Scott Joseph Nielsen. Defendant filed a brief (Filing No. 19) supporting the motion and the government filed a brief in opposition. (Filing No. 25). The undersigned magistrate judge held status conferences with counsel on September 7 and 14, 2021, to clarify issues raised in the motion. Thereafter, the government filed a supplemental brief (Filing No. 32) and Defendant filed a reply brief (Filing No. 39).

      An evidentiary hearing was held on the motion on November 9, 2021. The transcript of the hearing (TR.) was filed on November 16, 2021. (Filing No. 50). Defendant was present at the hearing with his counsel, Rebecca J. Smith. The government was represented by Assistant United States Attorney, Martin J. Conboy IV. Former Deputy Sarpy County Sheriff, Earl Johnson ("Deputy Johnson"), Sarpy County Sheriff Deputy Jason Jones ("Deputy Jones"), Sarpy County Sergeant Richard Montgomery ("Sgt. Montgomery"), and Jessica Moran testified at the hearing. The Court received into evidence Exhibits 1-4 offered by the government and Exhibit 108 offered by Defendant, without objection. (TR. 36, 60). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

      On December 21, 2020, at approximately 6:20 p.m., Deputy Johnson was on patrol in a marked police cruiser when he noticed a man standing in a dumpster outside of a closed flooring store in the loading dock area of a business park. (TR. 12-15). Deputy Johnson observed a green

Mazda pick-up truck parked parallel to the dumpster, blocking access to the dumpster.[1] Deputy Johnson thought the Mazda and the man in the dumpster looked suspicious and radioed dispatch to advise he was going to make contact with the individual. Deputy Johnson's police cruiser audio-visually recorded the encounter.[2] (Ex. 1). Deputy Johnson approached the man and asked for identification. The man produced a Nebraska driver's license identifying him as Scott Joseph Nielsen, Defendant. (TR. 17). Defendant stated a store employee told him he was allowed to search the dumpster, but could not remember the employee's name and indicated permission was given some time ago. (TR. 23). Deputy Johnson ran a records check of Defendant and learned he had an active felony arrest warrant for distribution of a controlled substance. (TR. 17, 37). Deputy Johnson handcuffed and searched Defendant, recovering a multi-tool flashlight and approximately $2,400 in cash. (TR. 17-18). After looking in the Mazda's windows with a flashlight, Deputy Johnson stated he was "pretty confident" there would be narcotics in the vehicle and requested a drug canine. (Ex. 1 at 12:16-25; TR. 37, 41). Defendant told deputies that the owner of the Mazda was his friend, Jessica Moran. (Ex. 1 at 16:54-17:04). Deputy Jones, a K-9 handler, arrived and walked his drug canine around the Mazda, but after circling the vehicle several times, the canine did not alert to the odor of narcotics.[3] (TR. 17, 21). Deputy Johnson testified that at this point, he did not believe he had probable cause to search the Mazda. (TR. 37).

Deputy Johnson discussed with Deputy Jones and another deputy on the scene the circumstances under which he had encountered and arrested Defendant. The deputies continued to look around the exterior of the Mazda and the surrounding area with flashlights. During this time, Deputy Johnson testified he could see "suspicious items" inside the Mazda, including "burglary tools" and items associated with car thieves and dumpster divers, or "scrappers." (Ex. 1 at 24:25-30:56; TR. 18-22, 39, 48). Deputy Johnson testified he could hear Defendant's cell phone ringing inside the Mazda and returned to his patrol vehicle to ask Defendant if he wanted his phone. Deputy Johnson asked Defendant if there were any keys he needed from his keychain because officers were "most likely" going to tow the Mazda, although Deputy Johnson was also

---

[1] Deputy Johnson observed a second vehicle parked nearby, which he later learned belonged to an employee of the flooring business. (TR. 15-16; Ex. 1 at 10:55-11:03, 15:55-16:03).

[2] Approximately 15 minutes into Exhibit 1, Deputy Johnson moved his patrol vehicle out of view of the Mazda so that it is no longer visible on the recording.

[3] Both deputies testified at the hearing that they believed the K-9 was distracted by the presence of chicken bones or other trash littered near the dumpsters. (TR. 52-53, 66).

contemplating contacting the Mazda's registered owner, Jessica, who lived approximately 25 to 30 minutes away, to pick it up. Deputy Johnson inquired as to whether Defendant had Jessica's number saved in his phone. Defendant said yeah and also confirmed he would like his phone. (TR. 19, 23-24, 48; Ex. 1 at 31:17-32:00).

Deputy Johnson returned to the Mazda to retrieve Defendant's phone and can be heard saying, "Holy fuck."[4] (Ex. 1 at 32:30-45). Deputy Johnson testified that after seeing the state of the Mazda's interior when retrieving Defendant's phone, he determined to tow the vehicle per the Sarpy County Sheriff's Department policy. (TR. 18-19, 28-29, 47). Deputy Johnson advised Defendant that deputies were going to tow the Mazda to their impound lot "based on you being in here within the dumpster and there's some weird stuff in that pick-up out there." (Ex. 1 at 34:07-35). Jessica testified she was never notified by law enforcement that her vehicle was going to be towed. (TR. 73).

After Deputy Johnson decided to tow the Mazda, he began an inventory search assisted by the other deputies. (TR. 20-21). Deputy Johnson began the search on the passenger side of the Mazda, where he found a black leather binocular case in the passenger seat. Deputy Johnson testified that when he picked up the binocular case, it was "very apparent that it did not contain binoculars." Deputy Johnson unzipped the binocular case and exclaimed, "Holy shit," when he found a large amount of cash and baggies containing suspected methamphetamine inside. (TR. 25-26; Ex. 1 at 36:40-37:00). Deputy Johnson continued searching the Mazda, finding additional cash strewn throughout the vehicle, a grocery bag containing boxes of Ziploc bags, license plates bearing different plate numbers not matching the Mazda, "burglary style tools," and a set of lock picks. (TR. 25-27). The deputies found a total of $11,621.36 in cash. The deputies catalogued these items of evidentiary value on an Evidence/Property Form. (Ex. 4). The deputies also completed a separate Tow/Impound Form to catalogue reasonably valuable items that did not have evidentiary value. (Ex. 3). Deputy Jones stayed on scene and towed the vehicle while Deputy Johnson transported Defendant to jail for booking. (TR. 34).

---

[4] Deputy Johnson testified he believes Exhibit 1 reflects he stated, "Oh fuck," when he found methamphetamine and a large amount of U.S. currency inside a closed binocular case he found in the Mazda. (TR. 25-26). However, after review of Exhibit 1, it appears at this point in time Deputy Johnson had not yet opened the binocular case and was mistaken about when he used the f-word expletive. The record is not clear what prompted this particular "Holy fuck" reaction.

Deputy Johnson testified regarding the written Sarpy County Sheriff's Office Standard Operating Procedures ("SOP") for towing vehicles that were in effect at the time of Defendant's arrest. (TR. 27-36; Ex. 2). Pursuant to the SOP, deputies were "required" to tow a vehicle when the driver is taken into custody. If a vehicle is not going to be held as evidence, deputies may exercise their discretion to release the vehicle to another responsible party, provided the individual is on the scene or can respond to the scene. (TR. 19-20; Ex. 2 at p. 2). The SOP also permitted deputies to tow a vehicle from private property if the tow is the result of an arrest. (TR. 30-31; Ex. 2 at p. 4). The SOP required all vehicles to be inventoried prior to being towed, and required deputies to complete a Tow/Impound Form and a separate Evidence/Property Form if contraband is found. The SOP further required deputies to check for property in all areas of the vehicle, including opening any closed containers to inventory for valuable items. (Ex. 2 at pp. 6-7).

Defendant has filed the instant motion to suppress all evidence obtained from the warrantless search of the Mazda and binocular case. Defendant contends the search violated the Fourth Amendment because probable cause did not exist for the search,[5] the inventory search was pretext for an investigatory search, law enforcement lacked authority to tow the Mazda because it was parked on private property and the property owner had not requested it be towed, and Deputy Johnson exceeded the scope of a permissible inventory search when he opened the closed binocular case. (Filing No. 18). The government asserts the inventory search was proper and conducted in accordance with standard operating procedures. (Filing No. 32).

## ANALYSIS

Defendant contends the warrantless search of the Mazda and binocular case violated the Fourth Amendment.[6] "The general rule is that a search conducted without a warrant is unreasonable; however, inventory searches are one exception to that rule." *United States v. Nevatt*, 960 F.3d 1015, 1020 (8th Cir. 2020)(citing *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir.

---

[5] The government does not assert probable cause supported the search of the Mazda.

[6] Although Defendant was not the registered owner of the Mazda, the government does not contest Defendant's standing to challenge its search since Defendant had driven it with the owner's permission. See *United States v. Russell*, 847 F.3d 616, 619 (8th Cir. 2017)(quoting *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995))("A defendant must present at least some evidence of consent or permission from the lawful owner/renter [of a vehicle] to give rise to an objectively reasonable expectation of privacy" to establish standing to contest the search of a vehicle).

4

2013)).  In this case, the government solely relies on the inventory search exception to the warrant requirement to justify the search of the Mazda.

"It is 'well-settled' law that 'a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody.'" *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015)(quoting *United States v. Rehkop*, 96 F.3d 301, 305 (8th Cir. 1996)).  "The purpose of an inventory search is to protect the owner's property while it remains in police custody, as well as to protect police against claims or disputes over lost or stolen property and from potential dangers." *Nevatt*, 960 F.3d at 1020.  "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *United States v. Green*, 929 F.3d 989, 992 (8th Cir. 2019)(quotations omitted).  "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." *Nevatt*, 960 F.3d at 1020 (citing *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013)).  However, this "does not foreclose the use of some discretion by officers so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Hall*, 497 F.3d 846, 850 (8th Cir. 2007)(quotations omitted).  The government bears the burden of proving its conduct complied with the inventory search exception.  See *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011).

 Defendant first contends the inventory search was improper because Deputy Johnson's decision to impound the Mazda was pretext for an investigatory search.  Defendant asserts the following factors demonstrate the inventory search was a ruse for an investigatory search: 1) prior to the canine sniff, Deputy Johnson stated he was "confident" something was in the Mazda; 2) the canine did not alert after circling the Mazda several times so officers did not have probable cause to search the Mazda; 3) Deputy Johnson commented he would check with the Mazda's registered owner to see if she wanted to pick up her vehicle, but ultimately did not contact her; and 4) the Tow/Impound Report lists "arrest" as the reason for the tow, not "inventory."  (Filing No. 39 at pp. 3-4; Ex. 3).

An inventory search cannot be a "ruse for general rummaging" to uncover evidence of a crime. *Nevatt*, 960 F.3d at 1020 (quoting *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir.

5

2013)). But, "[w]hen officers follow standardized procedures, there is no 'inference' that the search is just 'a ruse for a general rummaging in order to discover incriminating evidence.'" *United States v. Williamson*, 849 F. App'x 176, 177 (8th Cir. 2021)(quoting *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993)). And, "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *United States v. Taylor*, 636 F. 3d 461, 465 (8th Cir.2011). "[S]omething else" must be present to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching the defendant's vehicle." *Id.* In *Taylor*, that "something else" was the officer's admission that the sole basis for the traffic stop, arrest, tow, and inventory search was her belief that the vehicle contained narcotics. See *id.*

In this case, Deputy Johnson arrested Defendant on an active felony arrest warrant on a private business's property. Defendant does not dispute the validity of his arrest. Pursuant to the written Sarpy County Sheriff's SOP in effect at the time, a deputy was "required" to tow a vehicle when the driver is arrested and taken into custody. Deputy Johnson testified he decided to impound the Mazda incident to Defendant's arrest pursuant to this written SOP, which he believed "required" him to tow a vehicle when he arrests its driver, with certain exceptions. (TR. 27-28). The written SOP did provide that deputies "shall not tow any vehicle from private property"— unless the tow is a result of an arrest, which was the case here. As such, the written SOP clearly permitted Deputy Johnson to tow the Mazda from private property after arresting its driver, Defendant.

The SOP did provide certain exceptions to a post-arrest tow. Relevant to this case, if a vehicle will not be held for evidence after the driver's arrest, a deputy may exercise his or her discretion to release the vehicle to its registered owner (or another responsible party), provided the individual is on the scene or can respond to the scene. The SOP provided that this transfer of possession "shall be at the deputy's discretion." (TR. 19-20; Ex. 2 at p. 2). Defendant was the only individual present on the scene. During the course of Deputy Johnson's encounter with Defendant, he learned the Mazda's registered owner was Jessica Moran. Deputy Johnson testified he did consider contacting Jessica prior to towing the Mazda and contacted dispatch to possibly find her contact information. (TR. 28). Deputy Johnson also asked Defendant if he had her phone number. However, Deputy Johnson learned Jessica lived 25 to 30 minutes away and ultimately decided to tow the Mazda rather than find out whether Jessica could respond to the scene. The

6

written SOP permitted Deputy Johnson to exercise his discretion in this manner and his decision was reasonable under the circumstances. See *United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994)("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory."); *United States v. Morris*, 915 F.3d 552, 556 (8th Cir. 2019)(finding officer reasonably exercised discretion to impound a vehicle, even though the defendant's husband could have come picked the vehicle up instead).

Deputy Johnson certainly made comments indicating he suspected Defendant was engaged in criminal activity and that his decision to impound the Mazda was based, at least in part, on the suspicious nature of items he saw inside the Mazda. Deputy Johnson testified he decided to tow the Mazda "about the time I got in the vehicle and got [Defendant's] phone out … it just became obvious that there were items in there that did not appear to be . . . It just seemed like there were items that could have possibly been stolen items in the vehicle[.]" (TR. 18-19). Deputy Johnson similarly told Defendant that deputies were going to tow the Mazda "based on you being in here within the dumpster and there's some weird stuff in that pickup out there." (Ex. 1 at 34:07-35). But, "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015). "If an impoundment is otherwise valid, an investigatory motive does not prevent police from towing a vehicle and conducting an inventory search . . . An investigatory motive does not render an inventory search invalid unless that motive is the officers' *sole* motivation in carrying out the search." *United States v. Evans*, 781 F.3d 433, 437 (8th Cir. 2015)(internal citations omitted)(emphasis added).

The evidence before the Court does not establish that Deputy Johnson's *sole* motive in impounding the Mazda was to conduct an investigatory search. Deputy Johnson had arrested Defendant pursuant to a felony arrest warrant for narcotics distribution and pursued further investigation to discover whether there was evidence of crime in or around the Mazda. The drug canine did not alert to the odor of narcotics and deputies admittedly did not develop probable cause to search the Mazda. The investigation was over. Defendant was in custody and deputies were left with a driverless vehicle blocking a dumpster on a closed business's property in an industrial area after dark. Deputy Johnson testified he decided to tow the Mazda based on his department's tow policy, which permitted a deputy to tow a vehicle after arresting its driver. Under these

circumstances, Deputy Johnson's decision to impound the Mazda was reasonable, even though he also suspected Defendant was involved in illegal activity.

Deputies then conducted the inventory search according to their standardized procedures. The written SOP required all vehicles to be inventoried prior to being towed, and required deputies to complete a Tow/Impound Form and a separate Evidence/Property Form if contraband is found. Once Deputy Johnson decided to tow the Mazda, he began an inventory search as required by the SOP. Deputies completed both a Tow/Impound Form (Ex. 3) and an Evidence/Property Form (Ex. 4) as outlined by the written SOP. See *Nevatt*, 960 F.3d at 1020("The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures[.]").

Defendant further argues that Deputy Johnson did not lawfully impound the Mazda because it was parked on a private business's property and the business had not requested the Mazda be removed. Defendant cites Neb. Rev. Stat. § 60-1903.02(1), which authorizes a law enforcement agency to remove an "abandoned or trespassing" vehicle on private property at the request of the property owner. Because the private business did not request that the Mazda be towed, Defendant contends Deputy Johnson lacked authority to do so. (Filing No. 39 at p. 4; TR. 76).

The statute cited by Defendant provides law enforcement with independent authority to tow an abandoned or trespassing vehicle on private property. However, in this case, Deputy Johnson impounded the Mazda incident to Defendant's arrest in accordance with his department's written SOP for towing vehicles. Impoundment of a vehicle for the safety of the property and the public is a valid "community caretaking" function of the police. *United States v. Petty*, 367 F.3d 1009, 1011-12 (8th Cir. 2004)(citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). "Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard." *United States v. Martin*, 982 F.2d 1236, 1240 (8th Cir. 1993). As discussed above, the written SOP "required" deputies to tow a vehicle when they take a driver into custody. The written SOP did provide that deputies "shall not tow any vehicle from private property"—unless the tow is a result of an arrest. The SOP provided separate procedures for towing vehicles "abandoned" on public property (Ex. 2 at pp. 2-3) and "abandoned" on private property (Ex. 2 at pp. 4-5). Deputy Johnson testified he did not consider the Mazda to be abandoned or trespassing and did not tow the Mazda on that basis (nor did the Mazda meet the definitions of an abandoned vehicle as defined by the SOP or the statute). Instead, Deputy Johnson

8

testified he was following the written SOP that permitted a deputy to tow a vehicle after arresting its driver, on private or public property. As such, the undersigned magistrate judge finds Deputy Johnson was authorized to tow the Mazda regardless of the statute's provisions regarding towing abandoned or trespassing vehicles on private property. See *United States v. Williamson*, 849 F. App'x 176, 178 (8th Cir. 2021)(finding "officers were free" to tow the defendant's truck from a car wash after his arrest based on the department's unwritten policy that officers are supposed to arrange for the vehicle to be towed after arresting its driver; the written policy did not permit towing of "abandoned vehicles on private property," but the defendant's truck was not "abandoned" after his arrest as defined by state statute incorporated into the written policy).

Defendant also argues that Deputy Johnson exceeded the scope of a proper inventory search once he opened the closed binocular case he found inside the Mazda, citing *Florida v. Wells*, 495 U.S. 1, 4 (1990). (Filing No. 39 at p. 5). In *Wells*, the Supreme Court found law enforcement violated the Fourth Amendment when they opened a closed suitcase during an inventory search because the department "had no policy whatever with respect to the opening of closed containers encountered during an inventory search." *Wells*, 495 U.S. at 4-5. Because the search "was not sufficiently regulated," it ran afoul of the Fourth Amendment. *Id.* at 4. Here, however, the written SOP specifically provides that when a deputy performs an inventory search of a vehicle, "all containers within the vehicle, open or closed, shall be opened and inventoried for valuable items." (Ex. 2). The SOP does not provide the deputy with discretion as to which containers to open—the policy requires all containers in the vehicle to be opened. The SOP's stated reason for this policy is to protect the deputy's safety and protect against claims of loss. Deputy Johnson similarly testified to his understanding that the SOP required opening closed containers during an inventory search to protect against claims of loss. Deputy Johnson testified he opened the binocular case in accordance with this policy. If standard operating procedure directs or permits an officer to open containers during an inventory search, doing so is not an unlawful search. *See Wells*, 495 U.S. at 4 (concluding "policies of opening all containers or of opening no containers are unquestionably permissible"). Accordingly, Deputy Johnson's opening of the closed binocular case during the inventory search did not violate the Fourth Amendment.

In sum, considering the totality of the circumstances, Deputy Johnson's decision to impound the Mazda and conduct an inventory search was reasonable and was conducted in accordance with standard written procedures. See *Green*, 929 F.3d at 992. Accordingly, evidence

9

obtained from the inventory search does not need to be suppressed as it was not obtained in violation of the Fourth Amendment. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Robert F. Rossiter Jr., Chief United States District Court Judge, that Defendant's Motion to Suppress (Filing No. 18) be denied.

Dated this 1st day of December, 2021.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge